1  Ronald L. Richman, SBN 139189
   Joye Blanscett, SBN 191242
2  BULLIVANT HOUSER BAILEY PC
   601 California Street, Suite 1800
3  San Francisco, California 94108
   E-mail: ron.richman@bullivant.com
4  E-mail: joye.blanscett@bullivant.com
   Telephone: 415.352.2700
5  Facsimile: 415.352.2701

6  Attorneys for Plaintiffs

7

                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9
                        SAN FRANCISCO DIVISION
10

11 BOARD OF TRUSTEES OF THE                Case No. C 07 2549 WDB
   LABORERS HEALTH AND WELFARE
12 TRUST FUND FOR NORTHERN                 COMPLAINT FOR DAMAGES FOR
   CALIFORNIA; BOARD OF TRUSTEES OF        BREACH OF COLLECTIVE
13 THE LABORERS VACATION-HOLIDAY           BARGAINING AGREEMENT, TO
   TRUST FUND FOR NORTHERN                 RECOVER UNPAID TRUST FUND
14 CALIFORNIA; BOARD OF TRUSTEES OF        CONTRIBUTIONS, FOR BREACH OF
   THE LABORERS PENSION TRUST FUND         FIDUCIARY DUTY AND FOR A
15 FOR NORTHERN CALIFORNIA; and            MANDATORY INJUNCTION
   BOARD OF TRUSTEES OF THE
16 LABORERS TRAINING AND RETRAINING
   TRUST FUND FOR NORTHERN                 [29 U.S.C. § 185(a) and 29 U.S.C. §§ 1109,
17 CALIFORNIA,                             1132(g)(2), 1145]

18              Plaintiffs,

19      vs.

20 E. UGARTE, INC., a California corporation
   dba KEVIN NELSON CONCRETE
21 CONSTRUCTION COMPANY; EDGAR
   ORLANDO UGARTE, an Individual;
22 ZOLMAN CONSTRUCTION &
   DEVELOPMENT, INC., AND SYNERGY
23 PROJECT MANAGEMENT, J/V, a joint
   venture; ZOLMAN CONSTRUCTION &
24 DEVELOPMENT, INC., a California
   corporation; SYNERGY PROJECT
25 MANAGEMENT, a sole proprietorship; and
   DOES 1-10,
26
                Defendants.
27

28

6078472.1                           – 1 –
                            COMPLAINT FOR DAMAGES

Now come the Plaintiffs, hereinabove named, and for their causes of action against Defendants, and each of them, allege as follows:

## I. JURISDICTION AND VENUE

1. This is an action for damages for breach of the collective bargaining agreement described below, for recovery of unpaid trust fund contributions, for breach of fiduciary duty and for injunctive relief. This Court has jurisdiction of the action under and pursuant to the provisions of 29 U.S.C. § 185 (§ 301 of the Labor Management Relations Act of 1947, as amended) and 29 U.S.C. §§ 1132(a)(3) and 1132(e)(1) (§§ 502(a)(3) and 502(e)(1) of the Employee Retirement Income Security Act of 1974, as amended) ("ERISA"). The suit arises from the defendants' failure to make trust fund contributions as required by its collective bargaining agreements, by the written trust agreements and by provisions of federal law.

2. Venue of the within action is properly laid in the U.S. District Court for the Northern District of California in that, under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), contributions are made to, and benefits are paid from, a corporate co-trustee bank in the Northern District of California.

## II. PARTIES

3. The Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California are the Plaintiffs herein. The Laborers Health and Welfare Trust Fund for Northern California, Laborers Vacation-Holiday Trust Fund for Northern California, Laborers Pension Trust Fund for Northern California, and Laborers Training and Retraining Trust Fund for Northern California ("the Trust Funds") are trust funds organized under and pursuant to the provisions of §§ 302(c)(5) and 302(c)(6) of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 186(c)(5) and 186(c)(6). The Trust Funds were established through collective bargaining agreements between the Northern California District Council of Laborers and employer associations representing construction industry employers doing business in Northern California. The Trust Funds are employee benefit plans created by written trust agreements

subject to and pursuant to §§ 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37). The Boards of Trustees, as fiduciaries, are the plaintiffs, who sue on behalf of the trust funds.

4. Each of the Trust Funds is a third party beneficiary of the collective bargaining agreement described below.

5. At all times mentioned herein, each of the Trust Funds was an express trust created by a written trust agreement subject to and pursuant to § 302 of the Labor Management Relations Act, 29 U.S.C. § 186, and a multi-employer benefit plan within the meaning of sections 3 and 4 of ERISA, 29 U.S.C. §§ 1002, 1003.

6. The Trust Funds provide a variety of benefits for laborers, retired laborers and other related covered employees on whose behalf contributions are made pursuant to collective bargaining agreements. The duties of the Board of Trustees of the Trust Funds include ensuring that employers who are signatories to said collective bargaining agreements comply with the terms of those agreements with respect to payments and contributions to the Trust Funds.

7. Plaintiffs are informed and believe, and upon that ground allege, that at all times material hereto, defendant E. Ugarte, Inc. is a business entity with its principal place of business located in Los Altos, California. Plaintiffs are further informed and believe, and upon that ground allege, that E. Ugarte, Inc. is and has been an employer within the meaning of Section 3(5) and Section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145 and an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185. Plaintiffs are informed and believe, and on that ground allege, that at all times material herein, E. Ugarte, Inc. operated under a California Contractors license No. 807097 on which it represented itself as doing business as Kevin Nelson Concrete Construction Company with a business address in Palo Alto, California. Plaintiffs are informed and believe, and upon that ground allege, that at all relevant times Ugarte and Kevin Nelson Concrete Construction Company were a single employer and collectively shall be referred to herein as "Ugarte".

8. Plaintiffs are informed and believe, and upon that ground allege, that defendant Edgar Orlando Ugarte was an individual who owned, operated and controlled Ugarte.

9. Plaintiffs are informed and believe, and upon that ground allege, that at all times material to this action Defendant Zoleman Construction & Development, Inc. and Synergy Project Management, J/V ("Zoleman & Synergy J/V") has been and continues to be a joint venture of the joint partners Zoleman Construction & Development, Inc. ("Zoleman") and Synergy Project Management ("Synergy"). Plaintiffs are informed and believe, and upon that ground allege, that Zoleman is a California corporation with its primary place of business in Mountain View, California. Plaintiffs are informed and believe, and upon that ground allege, that Synergy is a sole proprietorship of its owner, Javad Mirsaidi, whose primary place of business is San Francisco, California.

10. Plaintiffs are further informed and believe, and upon that ground allege, that Zoleman & Synergy J/V, Zoleman, and Synergy are and have been each an employer within the meaning of Section 3(5) and Section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145 and an employer in an industry affecting commerce within the meaning of Section 301 of the LMRA, 29 U.S.C. § 185.

### III. FIRST CLAIM FOR RELIEF
#### (Breach of Collective Bargaining Agreement)

11. Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1-10 of this Complaint.

12. On or about January 20, 2006, Edgar Ugarte executed a standard memorandum agreement on behalf of "Kevin Nelson Concrete" as its president. By virtue of his signing the memorandum agreement, Defendant Ugarte became bound to a written collective bargaining agreement with the Northern California District Council of Laborers ("Laborers Union") referred to as the Master Agreement For 2002-2006 ("Master Agreement"). In agreeing to be bound to the Master Agreement, Ugarte further agreed to be subject to and bound by all provisions and conditions of the written Trust Agreements which established the trust funds. Pursuant to the provisions of the Master Agreement, Ugarte agreed to be bound by all terms relating to wages, hours and conditions of employment prescribed therein with the Laborers Union.

6078472.1                              - 4 -
COMPLAINT FOR DAMAGES

13. By virtue of the Master Agreement and Trust Agreements, Ugarte promised and agreed that: (1) they would pay employee fringe benefit contributions into each Trust Fund in regular monthly installments commencing on or before the 15th day of the month immediately succeeding the month in which the employee's work was performed; (2) that in the event that any of said monthly installments were not paid in full on or before the 25th day of the month in which such contributions became due, they would pay interest on the delinquent contribution in the amount of 1.5% per month until paid in full, and would also pay the amount of $150.00 for each delinquent contribution as liquidated damages, and not as a penalty; and (3) that if any suit with respect to any of said contributions or payments were filed against them, defendants would pay into said Trust Funds the attorneys' fees, costs and all other expenses incurred in connection with such suit.

14. The Master Agreement between the Laborers Union and Ugarte has never been terminated.

15. Plaintiffs have performed all conditions, covenants and promises on their part to be performed in accordance with the terms and conditions of the Master Agreement and Trust Agreements.

16. Within four years last past, defendants materially breached and broke the aforesaid Master Agreement and Trust Agreements in the following respects:

    a. by failing to pay all employee fringe benefit contributions reported into each Trust Fund for the period January and February 2006 in the principal amount of $17,436.05;

    b. by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions in an amount calculated to be $3,012.38 as of January 25, 2007; and

    c. by failing to pay liquidated damages and interest on employee fringe benefit contributions that were paid, but paid late, for the period March 2006 in the amount of $201.10 as of January 25, 2007.

17. The aforesaid material breaches proximately caused damages to plaintiffs in the following approximate amounts, all according to proof at trial: (a); for unpaid contributions in the principal amount of $17,436.05; (b) for interest and liquidated damages on unpaid contributions calculated at $3,012.38 as of January 25, 2007; (c) liquidated damages and interest on contributions paid, but paid late, in the amount of $201.10 as of January 25, 2007. Interest will continue to accrue at the rate of 1.5% each month during the pendency of this lawsuit.

18. Plaintiffs have incurred and will continue to incur attorneys' fees in the within action. Pursuant to the provisions of the Master Agreement and the Trust Agreements, Plaintiffs request that the Court award plaintiffs their attorneys' fees and costs incurred in the bringing of the within action.

WHEREFORE, plaintiffs pray for judgment as set forth below.

### IV.   SECOND CLAIM FOR RELIEF
### (Breach of Collective Bargaining Agreement)

19. Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1-18 of this Complaint.

20. On or about August 16, 2003, the president and CEO of Zoleman executed a standard memorandum agreement with the Laborers Local Union No. 389. By virtue of singing the memorandum agreement, Defendant Zoleman became bound to a written collective bargaining agreement with the Northern California District Council of Laborers ("Laborers Union") referred to as the Master Agreement For 2002-2006 ("Master Agreement"). In agreeing to be bound to the Master Agreement, Zoleman further agreed to be subject to and bound by all provisions and conditions of the written Trust Agreements which established the trust funds. Pursuant to the provisions of the Master Agreement, Zoleman agreed to be bound by all terms relating to wages, hours and conditions of employment prescribed therein with the Laborers Union.

21. Under the Master Agreement, Zoleman also agreed that its obligation under the Master Agreement would apply equally to any subcontractors of any tier under its control or working under a oral or written contract with Zoleman on any work covered under the Master

Agreement. Zoleman further agreed to be liable for any delinquencies of the subcontractor in the payment of trust fund contributions or wages.

22. The Master Agreement between the Laborers Union and Zoleman has never been terminated.

23. Plaintiffs have performed all conditions, covenants and promises on their part to be performed in accordance with the terms and conditions of the Master Agreement and trust agreements.

24. At some date unknown to plaintiffs, Zoleman entered into a joint venture agreement with Synergy. The Zoleman & Synergy J/V became the general contractor on the Cabrillo College Student Activity Center Project ("Project").

25. Pursuant to the collective bargaining agreement, Zoleman was obligated to make trust fund contributions and pay wages in accordance with the collective bargaining agreement for all covered work on the Project. Zoleman was also liable for any trust fund contributions and wages not paid by its subcontractors on the Project.

26. As a partner with Zoleman in the Zoleman & Synergy J/V, Synergy is also liable for any unpaid trust fund contributions on the Project. The liabilities for unpaid trust fund contributions related to the purpose of the joint.

27. Plaintiffs are informed and believe and on that basis allege, that Zoleman & Synergy J/V subcontracted work on the Project to Ugarte. For worked performed on the Project, Ugarte breached the collective bargaining agreement by:

    a. by failing to pay all employee fringe benefit contributions reported into each Trust Fund for the period January and February 2006 in the principal amount of $17,436.05;

    b. by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions in an amount calculated to be $3,012.38 as of January 25, 2007; and

  c. by failing to pay liquidated damages and interest on employee fringe benefit contributions that were paid, but paid late, for the period March 2006 in the amount of $201.10 as of January 25, 2007.

28. Defendants Zoleman, Zoleman & Synergy J/V and Synergy are therefore liable for the damages caused to plaintiffs by Ugarte's breach in the following approximate amounts, all according to proof at trial: (a) for unpaid contributions in the principal amount of $17,436.05; (b) for interest and liquidated damages on unpaid contributions in an amount calculated to be $3,012.38 as of January 25, 2007; and (c`) liquidated damages and interest on contributions paid, but paid late, in the amount of $201.10 as of January 25, 2007. Interest will continue to accrue at the rate of 1.5% each month during the pendency of this lawsuit.

29. Plaintiffs have incurred and will continue to incur attorneys' fees in the within action. Pursuant to the provisions of the Master Agreement and the Trust Agreements, Plaintiffs request that the Court award plaintiffs their attorneys' fees and costs incurred in the bringing of the within action.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## IV. THIRD CLAIM FOR RELIEF

**(Recovery of Unpaid Trust Fund Contributions)**

**(ERISA §§ 502(g)(2), 515)**

30. Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1-15 of this Complaint.

31. ERISA Section 515, 29 U.S.C. §1145, requires defendants to make such contributions to the plaintiff Trust Funds as are required under the terms of their collective bargaining agreement with the Union. Pursuant to the provisions of their Trust Agreements, plaintiffs are entitled to enforce defendants' obligations to make those contributions.

32. Plaintiffs are informed and believe, and on that ground allege, that defendants failed to report and pay all employee fringe benefit contributions into each Trust Fund for the period February and March 2006 in the principal amount of $17,436.05. Defendants are further obligated by the provisions of the Master Agreement and the trust agreements to pay interest on

unpaid contributions at the rate of 1.5% per month until paid and liquidated damages in the amount of $150.00 for each month that defendants failed to timely report and pay all employee fringe benefit contributions into each Trust Fund.

33.  Pursuant to the provisions of ERISA, Section 502(g)(2), 29 U.S.C. §1132(g)(2), plaintiffs are entitled to the following statutory relief:

(a) Section 502(g)(2)(A): for contributions not paid, an award of the unpaid fringe benefit contributions in the approximate principal amount of $17,436.05 according to proof at trial;

(b) Section 502(g)(2)(B): for contributions not paid, an award of interest on the unpaid fringe benefit contributions at the rate of 1.5% per month, from the date of the delinquency, until the date of judgment; and

(c) Section (g)(2)(C): the additional award of an amount equal to the greater of (i) interest on the unpaid fringe benefit contributions at the rate of 1.5% per month, from the date of the delinquency, until the date of judgment or liquidated damages; or (ii) liquidated damages under the Master Agreement and trust agreements of $150.00 for each month that defendants failed to timely report and pay all employee fringe benefit contributions into each Trust Fund, calculated to be $3,01238 as of January 25, 2007 for contributions not reported and not paid.

34.  Plaintiffs have incurred and will continue to incur attorneys' fees in the within action. Pursuant to the provisions of §502(g)(2)(D) of ERISA, 29 U.S.C. §1132(g)(2)(D), plaintiffs request that the Court award plaintiffs their attorneys' fees and costs incurred in the bringing of the within action.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## V.  FOURTH CLAIM FOR RELIEF

### (Breach of Fiduciary Duty)

### (ERISA §§ 409(a) and 502(a)(2))

35. Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1-34 of this Complaint.

36. Pursuant to the trust agreements establishing the Trust Funds, the funds' assets include employee fringe benefits contributions that are required to be made to the Trust Funds. Employee fringe benefit contributions that are due and become delinquent are therefore assets of the Trust Funds.

37. Plaintiffs are informed and believe, and on that ground allege, that at all relevant times, Edgar Orlando Ugarte exercised authority or control over the payment of the employee fringe benefit contributions required to be made to the Trust Funds by Ugarte and that Edgar Orlando Ugarte was a fiduciary as defined by ERISA Section 3(21), 29 U.S.C. § 1002(21), and was therefore also a party in interest as defined by ERISA Section 3(14)(A), 29 U.S.C. § 1002(14)(A). At all relevant times, defendant Ugarte was an employer whose employees were covered by the Trust Funds' plans and was a party in interest within the meaning of ERISA Section 3(14)(C), 29 U.S.C. § 1002(4)(C).

38. Plaintiffs are informed and believe, and on that ground allege, that defendant Edgar Orlando Ugarte's role in Ugarte's failure to make the employee fringe benefit contributions that became due to the Trust Funds constituted a breach of his fiduciary duties, in that he failed to act for the exclusive purpose of providing benefits to participants in the Trust Funds' plans and their beneficiaries, and instead dealt with these assets of the Trust Funds in his own interest and/or in the interest of Ugarte. Plaintiffs are authorized to seek relief for this breach under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2). As a result of said breaches, defendant Edgar Ugarte has become indebted to plaintiffs as follows:

(a) by failing to pay all employee fringe benefit contributions reported into each Trust Fund for the period January and February 2006 in the principal amount of $17,435.05;

(b) by failing to pay interest and liquidated damages on the unpaid and delinquent employee fringe benefit contributions calculated as $3,012.38 as of January 25, 2007; and

     (c)    by failing to pay liquidated damages and interest on employee fringe benefit contributions that were paid, but paid late, for the period March 2006 in the amount of $201.10 as of January 25, 2007.

The aforesaid material breaches proximately caused damages to plaintiffs in the following approximate amounts, all according to proof at trial: (a) for unpaid contributions in the principal amount of $17,436.05; (b) for interest and liquidated damages on unpaid contributions in an amount calculated as $3,012.38 as of January 25, 2007; and (c) liquidated damages and interest on contributions paid, but paid late, in the amount of $201.10 as of January 25, 2007. Interest will continue to accrue at the rate of 1.5% each month during the pendency of this lawsuit.

39. In addition, pursuant to ERISA Section 409(a), 29 U.S.C. § 1109(a), plaintiffs request that the Court grant plaintiffs such further remedial relief as the court deems just and proper.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## VI. FIFTH CLAIM FOR RELIEF

### (Mandatory Injunction)

### (ERISA § 502(g)(2)(E)

40. Plaintiffs reallege and incorporate by reference, as though fully set forth, the allegations contained in paragraphs 1-39 of this Complaint.

41. Pursuant to the terms and conditions of the Master Agreement and Trust Agreements, defendants are required to allow the Trust Funds access to their books and records to determine the amount of trust fund contributions due and owing. Plaintiffs have, as one of their purposes, the obligation to ensure that contributions required to be made to the Trust Funds are fully and correctly made. The purposes of the respective funds are to provide health and welfare, vacation, pension and other benefits for laborers, retired laborers and other related covered employees on whose behalf contributions are made, which benefits are supported by such contributions, and to ensure that employers who are signatories to the collective bargaining

agreement referred to herein comply with the terms of the agreement with respect to the payment of contributions to the Trust Funds.

42. Pursuant to ERISA § 502(g)(2)(E), 29 U.S.C. § 1132(g)(2)(E), the Court may award such other legal or equitable relief as the Court deems appropriate, and pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), plaintiffs are entitled to obtain appropriate equitable relief for the breaches alleged herein. Plaintiffs seek a mandatory injunctive order of this Court ordering and requiring defendants to permit plaintiffs' auditor access to the books and records of defendants, in order to permit plaintiffs to verify the precise amounts owed by defendants to the Trust Funds.

43. Plaintiffs seek a mandatory injunctive order from this Court because plaintiffs have no adequate legal remedy in that an audit of the books and records of defendants is the only means to accurately verify the additional amounts owed by defendants to the Trust Funds.

WHEREFORE, plaintiffs pray for judgment as set forth below.

## VII.  RELIEF REQUESTED

WHEREFORE, plaintiffs pray for judgment as follows:

1. On the First Claim for Relief, for damages for breach of the collective bargaining agreement for judgment against Ugarte (a) for unpaid contributions in the principal amount of $17,436.05; (b) for interest and liquidated damages on unpaid contributions in an amount calculated as $3,012.38 as of January 25, 2007; and (c) liquidated damages and interest on contributions paid, but paid late, in the amount of $201.10 as of January 25, 2007, all additional accrued interest and liquidated damages, and such other or further amounts as may be shown at trial and as may be discovered after plaintiffs have had the opportunity to conduct an audit of defendants' books and records, for costs of suit, attorneys' fees and for such other further relief as the Court may deem just and proper.

2. On the Second Claim for Relief, for damages for breach of the collective bargaining agreement for judgment against the defendants Zoleman, Zoleman & Synergy J/V and Synergy, and each of them, (a) for unpaid contributions) in the principal amount of $17,436.05; (b) for interest and liquidated damages on unpaid contributions in an amount calculated as $3,012.38 as

of January 25, 2007; and (c) liquidated damages and interest on contributions paid, but paid late, in the amount of $201.10 as of January 25, 2007, all additional accrued interest and liquidated damages, and such other or further amounts as may be shown at trial and as may be discovered after plaintiffs have had the opportunity to conduct an audit of defendants' books and records, for costs of suit, attorneys' fees and for such other further relief as the Court may deem just and proper.

3. On the Third Claim for Relief, for recovery under ERISA § 502(g)(2), 29 U.S.C. § 1132(g)(2), for judgment against the defendants, and each of them, as follows: (a) under Section 502(g)(2)(A) - for contributions not paid, an award of the unpaid fringe benefit contributions in the approximate principal amount of $17,436.05, according to proof at trial; (b) under Section 502(g)(2)(B) - for contributions not paid, an award of interest on the unpaid fringe benefit contributions at the rate of 1.5% per month, from the date of the delinquency, until the date of judgment,; and (c) Section (g)(2)(C) - the additional award of an amount equal to the greater of (i) interest on the unpaid fringe benefit contributions at the rate of 1.5% per month, from the date of the delinquency, until the date of judgment or liquidated damages; or (ii) liquidated damages under the Master Agreement and trust agreements of $150.00 for each month that defendants failed to timely report and pay all employee fringe benefit contributions into each Trust Fund, all additional accrued interest and liquidated damages, and such other or further amounts as may be shown at trial and as may be discovered after plaintiffs have had the opportunity to conduct an audit of defendants' books and records, for costs of suit, attorneys' fees and for such other further relief as the Court may deem just and proper.

4. On the Fourth Claim for Relief, for breach of fiduciary duty under ERISA § 409(a), 29 U.S.C. § 1109 (a) for unpaid contributions in the principal amount of $17,436.05; (b) for interest and liquidated damages on unpaid contributions in an amount calculated as $3,012.38 as of January 25, 2007; and (c) liquidated damages and interest on contributions paid, but paid late, in the amount of $201.10 as of January 25, 2007, all additional accrued interest and liquidated damages, and such other or further amounts as may be shown at trial and as may be discovered after plaintiffs have had the opportunity to conduct an audit of defendants' books and records,

for costs of suit, attorneys' fees and for such other further relief as the Court may deem just and proper.

    5.   On the Fifth Claim for Relief, that defendants be compelled to forthwith submit to an audit by an auditor selected by plaintiffs, which audit is to be conducted at the premises of defendants during business hours, at a reasonable time or times, and to allow said auditor to examine and copy such books, records, papers and reports of defendants that are relevant to the enforcement of the collective bargaining agreement and trust agreements, including, but not limited to, the following for the period of October 1, 2004 through the present:

> California Quarterly Report of Wages, Form DE-6; Federal Tax Forms W-3/W-2 and 1069/1099; Payroll Registers/Journals; Individual Earnings Records; Source Records, including time cards and time card summaries for all employees; contribution reports for all trust funds; workers' compensation reports; certified payroll reports; personnel records indicating job classifications and hire/termination dates; cash disbursement journal; vendor invoices; copies of subcontract agreements; cash receipts journal; general ledger; job cost records; records of related entities; and any other books and records that may be necessary to complete the auditor's determination or provide additional explanation.

DATED: April 30, 2007

                                                         BULLIVANT HOUSER BAILEY PC

                                                          By _____
                                                              Joye Blanscett
                                                             Attorneys for Plaintiffs